The last case on our call this morning is agenda number 4, number 127838. People of the State of Illinois v. Angelo Clark. Counsel to the defense. May it please the court, I'm Todd McHenry and I represent Angelo Clark. There are two issues that we bring today before the court. The first one is in regards to the Chicago Police Department's investigative alert system, which we believe has resulted in an unconstitutional arrest. The second issue is whether or not Angelo, as a juvenile offender who was sentenced after the effective date of the juvenile sentencing statute, should be entitled to its protections. I anticipate spending perhaps the majority of the time on the first issue, but I do want to make an effort to transition to the second one to answer any questions on that too. In regards to the first issue, Illinois, specifically the Chicago Police Department, has done an extraordinary thing by formally instituting a system that functions as a proxy warrant system. In this particular case, it shows and illustrates sort of the high watermark for how egregious this practice has become. Is it your contention this is a policy and practice of the Chicago Police Department to use investigative alerts to make warrantless arrests of individuals? Absolutely. If you look at the police directive that sets forth the program, there is absolutely no criteria for when they would go to a judge and try to get a warrant unless they believe that the suspect has fled the jurisdiction. In all other cases, there's no discretion formally by the system itself that would give officers any sort of direction. How long has this system been in existence? I believe since the early 2000s, somewhere between the early 2000s and 2010, somewhere around there. But it's become prevalent that in People v. Smith, an officer candidly testified that they don't even get arrest warrants anymore unless they think somebody has fled the jurisdiction. So this is the primary means by which in Chicago you're going to be arrested. Have you been able to determine whether or not the police department focuses on all citizens or do they focus on a specific group of citizens? I think there's certainly, as Your Honor cited in the concurrence in Bass, there's certainly, you know, some reporters have found that this has been disproportionately applied towards African American and Latinx communities, particularly in the south side and the west side of Chicago. But the way that the police in this case actually instituted this investigative alert was not simply in public. They actually proceeded to actually two residents that they believed. The first one they thought, Angelo, resided with his mom, and they went to one residence without getting an arrest warrant. And then when they found out he lived with his aunt, they proceeded to a second residence. You know, this shows the high watermark for police. If you're going to head to a home to arrest somebody and you don't bother to get an arrest warrant, it shows just how common and egregious this practice has become. Angelo was- At the second residence, a person answered the door. And what do we know about that person, what his relationship was to that home? We know that it's an unknown individual, a black male who was between 20 and 25 years old. There's been no evidence as to the connection to the home. This was in the middle of the day. It wasn't like they came in the middle of the night and looked somebody up. Did that person authorize consent to enter the home? Is that known? I don't believe so. I mean, that's what's being disputed. But the state would need to prove that they did-that the person did more than just ask, we ask, to authority. So that it's on the state to prove that they did-that they felt that they were free to, one way or another, invite the person in or not. And they elected to invite the person in. Here, Officer Kinney twice announced that he had probable cause-he had an arrest investigative alert based on probable cause. So by announcing that fact, that would give a reasonable person in either the defendant's shoes or this unknown 20 to 25-year-old's shoes the belief that this is not discretionary. They're here to arrest and they have the authority to do so based on this investigative alert. There's no evidence in the record to establish that the person who answered the door has authority to give consent to enter? No. It was not argued at the trial court. It hasn't been argued since that. Were there any exigent circumstances? I noticed the alleged crime took place on a certain date and within three days-it was three days later that they executed this investigative alert. So were the circumstances exigent? Did they need to make the arrest in this manner? No. And they didn't-at the time-in the trial court when they litigated this, the state did not make an argument really that exigency existed. The officer testified that I went in when he got his clothes and I guess presumably because he wanted to make sure that he didn't get anything else. But this is a situation where that officer chose not to get an arrest warrant from a judge and so they put themselves in that situation to begin with. And again, Angelo Clark, nobody indicated that he was a shooter in this. He was a kid who was at best seen at the scene, coming to the scene with a group of people who became the shooters, and he was crouched down across the street. There was no evidence that he was armed or communicating with them, so he certainly wasn't a threat. There would have been no reason to believe that he was a threat. And since more than 48 hours had passed since the time of the offense, if he had any evidence he was trying to get rid of, he would have. If he was going to flee the area, he could have. So at some point, those concerns no longer are present, and that's our position is that police here, there was no reason that they couldn't have done the right thing and gotten an actual arrest warrant. Angelo, what's your position on probable cause? Was there probable cause in this instance? I don't believe so. And I think this case actually perfectly illustrates why it's important for a judge to make that determination because there's some ambiguity. Best case scenario for the state is that somebody had come forward and said that he was part of the shooters. The officer, Kenny, testified when he was asked, and it was not a great question by the state's attorney because it's not clear. He was asked, basically, do you know what the basis of probable cause was? He wasn't asked, do you know at the time you executed this investigative alert, did you know then what the basis was? But he said that it was because he was one of the shooters. So that was either an incorrect statement or the investigative alert incorrectly stated something like that. We don't have the alert. It was not made part of the record, which is part of the problem and the reason why the Illinois delegates to the constitutional conventions have been concerned about, you know, that an actual arrest warrant is required because you get a permanent record and something to go off of instead of an officer two and a half years later speculating as to what they may have known or why they acted the way they did. So I have a couple questions. One, let's talk about the probable cause. The day after the shooting, a man named Craig Hardaway gave a video-recorded statement, and the statement itself was admitted, I think, at trial. And his statement was that he told detectives that shortly after he heard gunshots, he observed DeAndre Butler got in the car, and that man said there were young men who were about to shoot someone. Three young men, including the defendant, then ran to the car, got in, told Butler they had committed the crime, and et cetera. Hardaway later testified that he encountered the defendant again about a half an hour later when the defendant reported to Butler that he had disposed of the guns. So that happens, I think, on the 20th. On the 21st, there's a videotaped statement by someone saying generally what I'm reading from the state's brief, that this person, this individual, got in the car, said he had been part of the shooting. The defendant said he was part of the shooting, and that later also the defendant said that he had disposed of the guns. The next day, the defendant's arrested. So this is not a long period of time. This is like X amount of hours from the time the videotaped statement of the witness saying this person said he was part of the shooting, and he disposed of the gun. The next day that he was arrested. I think those are the things. So let me ask you this. Let's talk about Gerstein v. Pugh. Gerstein has been the law in this country for almost 50 years, in which the United States Supreme Court says that it is not a violation of the Fourth Amendment for a police officer to effectuate a warrantless arrest if, in fact, that person is brought before a judge to determine a crime or cause in a timely manner. There's no question that he was brought before a judge in a timely manner. Where does Gerstein v. Pugh fit in? I don't see that discussed very much in your brief. Well, I think that with respect to the Illinois Constitution, I think that that argument was rejected in the debates to the Constitutional Convention in 1970, where they expressly considered altering the affidavit requirement to provide even more clearly than the Fourth Amendment to just get away with the oath or affirmation or the affidavit requirement and just simply require probable cause only. I thought that you were making an argument under the Fourth Amendment. Under both. So let's talk about Gerstein v. Pugh and the Fourth Amendment. Sure. How does Gerstein v. Pugh affect your Fourth Amendment argument? I mean, we stand by the position that we took in the briefs. But basically, same thing. If this arrest were to happen in the House, Payton v. New York would certainly comply. I'm not talking about Payton. I'm talking about Gerstein. This is actually straightforward. Under the Supreme Court jurisprudence under the Fourth Amendment, may an officer effectuate a warrantless arrest and not violate the Constitution if, in fact, the defendant is brought before a judge to make a probable cause determination within a short amount of time? I don't believe so. And I would like to, with your honor's grace, allow me to talk just about Payton v. New York, too, because that violation is not cured by a Gerstein here. So if police violate Payton v. New York, there's no question of, well, you get a, you know, yeah, you've been arrested. But the investigative alert issue is not the same thing as going to the home. The bigger issue that we're all concerned about is the practice of the Chicago Police Department using investigative alerts. So I'd like to pursue that. Why is that unconstitutional under the Fourth Amendment when Gerstein has said an officer can make an arrest without a warrant if, in fact, the arrestee is brought before a judge within a timely manner to determine a probable cause? Why is this unconstitutional under the Fourth Amendment? It's my hope that – I mean, certainly the U.S. Supreme Court has never been faced with a police department that has created a system to replace the judge's role in assessing probable cause. So – It's because of the system? It's because of the computerized system? What is – Because they are assuming responsibility for making the determination of probable cause. Well, no, under Gerstein v. Pew, the judge who hears the Gerstein hearing is making that decision, right? And the Supreme Court says that's okay after the warrantless arrest. I mean, I just respectfully – what I disagree is that I don't think that Gerstein was contemplating a system to replace the role of judges as a whole. And I think there is a difference between looking at Fourth Amendment law, the way that it's evolved, has been chipped away based on little exceptions. Can you tell me another case – I think Pew is 75 or 73 or something like that. Can you tell me another case from the United States Supreme Court that would support your idea that Gerstein does not apply here? Well, I mean, Gerstein, I don't think, can apply in the sense that for the same reason that a patent violation is not – that there's – I mean, there's certainly a remedy for a patent violation even though you get a Gerstein hearing. So I don't think – and that's for the Fourth Amendment purposes. That's not in the Illinois state constitution. So I don't believe that the fact that you get a Gerstein hearing changes the fact that your rights have been violated. I'm with an arrest without a warrant. Arrest based on this proxy warrant. Let's get back to what it is that you want to talk about. How did the police enter the residence on the 22nd? By announcing that they had an investigative alert with probable cause to arrest. And then they asked – Officer Kenny asked Angelo whether, you know, if he would come with them. He said, okay, let me get some clothes. He got his clothes and he went with them. At what point did the arrest take place? In the house, correctly? Because the defendant was acquiescing or submitting to the authority of the police who said they had an investigative alert. Would you agree? Correct. Inside the house is where he was certainly effectuating the arrest at that point. And then – Did the officer address the question as to whether or not he had consent to enter that residence? He did. He said he did not get verbal consent. And the state did not ask, well, did you get consent of any other kind? So this idea that the state is bringing forth now that there was some sort of nonverbal consent given, that's a new theory. There was no evidence presented, no argument on that basis below. And again, I think it's important to just – to go back to the question of probable cause. It is an important question and it's certainly important distinguishing the Fourth Amendment versus the LRA Constitution, Article I, Section 6, where in the Constitutional Convention, they expressly were given the opportunity. Somebody proposed, hey, let's just make it about probable cause, which is how we're interpreting the U.S. Supreme Court case law since the 70s. It's sort of evolved to be more about that. And they rejected that. They rejected the proposal and they not only – did they keep the affidavit requirement, but they didn't change it back to the Fourth Amendment wording. So are we in lockstep with the United States Supreme Court on Gerstin or are we not? We're in limited lockstep. There are several areas in which the LRA Constitution has proven to give broader protections than does the Federal Constitution. Some of them, the text differs. Like in this case, we have clear textual differences and we have legislative history showing that they've expressly rejected a lower standard that the Fourth Amendment may allow. Plus, then you would look at case law since then, which has – there have been several cases starting from 1898 in which the LRA Supreme Court – this court has found that LRA does provide greater protection with respect to the foot warrant requirement. If there are no further questions, I would like to address a few – any questions that you may have on the second issue because it's an important one. Angelo was a juvenile offender who was sentenced after the effective date of the juvenile sentencing statute, which makes it mandatory that sentencing judges put forth some sort of a record indicating that they considered these mitigating factors. Such as the defendant's age and attendant circumstances. In this case, Judge Ford made no mention of the statute. Nobody talked about the statute. Judge Ford said that he was mindful of Angelo's age when he was sentenced to the 32-year aggregate sentence. However, this court in Reyes, this court in Buffer, have made clear that when a defendant, even though their offense has been committed prior to the date that the sentencing statute was enacted, they're still entitled to its protections if they were sentenced or resentenced afterwards, which is directly on point. Is there ambiguity here in how the statute is written as far as the effective date of modification? We don't believe so based on, you know, it seems obvious in reading it based on this court's precedent for the years following. It was always that, well, the parties agreed, even the state agreed, that that date would apply essentially to when you were sentenced, not to when the date of the offense occurred. But to the extent that there would be any ambiguity, then the statute on statutes would apply. And at that point, certainly if you looked at legislative history and, you know, we need to try to interpret the statute such that it makes sense. And in this case, you know, there's simply no plausible justification when you have a juvenile offender before you and you know what's required of you as a sentencing court, but you would elect not to follow it. You know, there's simply, it's not a question of like floodgates opening or anything like that. Angelo Clark should have been entitled to those factors being considered. That's why we asked this court to reverse the culprit's decision and demand for a new trial and also to make clear that he should be entitled to the sentencing protections afforded to juveniles. Thank you. I'd like to start where defendants started with this claim that the circuit court erred by denying his motion to quash his arrest. And I'd like to specifically start with identifying what that claim is, because the claims that have been raised at various times in various jurisdictions  and the claims that have been raised today are not the same claims. In the trial court, defendant's motion to suppress him, the hearing on that motion, was on the theory that Officer Kinney had entered the home without a warrant. So it was a warrantless entry in violation of Peyton v. New York. There wasn't discussion, there wasn't a dispute really about whether there was probable cause. The trial court found as a factual matter that defendant was not arrested inside the home. He was arrested outside the home. The defendant has not shown that that factual determination is against the manifesto. Counsel, I have a question about that. The arrest outside the home. So the officer comes to the door. Some person answers the door. The officer enters the home. The defendant is inside the home, inside a room, I believe. And the officer accompanies him outside the house, into the backyard, and then affects the arrest. Is that correct? No, that's not correct. Officer Kinney's testimony was that he came to the door. He knocked on the door. A man answered the door. He said, I'm here looking for defendants. The man opened the door, stepped to his side, and gestured at defendant sitting within. Is there any indication that that person had authority to consent to? No, Your Honor. But I think the thing that I'm trying to correct according to this apprehension is that Kinney did not then enter the home. From outside the door, he asked defendant if he would be willing to come to the station. Defendant said yes. He found some clothing. Then Officer Kinney entered, stood there while defendant got dressed, and they left outside. He got arrested. The court found his affections. I just want to slow it down there a minute. Sure. So the officer does enter the house. Eventually, yes. The defendant is inside the house, changes his clothes. The two of them exit the house together. That's correct. And then outside in the backyard is where the arrest is made. Is that right? That's correct. Now that claim, the claim that he was either arrested inside the home because he was actually arrested inside the home as his mother testified and the court did not believe her, or that he was arrested inside the home because the officer's statement across the threshold was an exercise of authority, that claim was not raked in the appellate court, and it was not raked in his PLA. So is your position that the arrest was made in public then because it was in the backyard? It was not inside the home? That is our position because that's the finding that the trial court made, but I think it is important to note that that wasn't defendant's claim in his petition for relief to appeal and that wasn't his claim in the appellate court. In those courts, his claim was not that the officers entered the home without a warrant. His claim was not that he was arrested without probable cause. His claim, as I think he makes clear in his reply brief, was that regardless of whether there was probable cause, and regardless of where the arrest was made, the problem is that it was made pursuant to probable cause communicated by an investigative alert. It's the investigative alert that he argued in the appellate court and in his PLA for this court, and then in his reply brief clarified the constitutional infirmity that he... So we shouldn't even be considering the other circumstances about the arrest, the fact that there was no warrant, the fact that there was an entry into the home, the fact that the arrest was made after the officer escorted him out. You're saying do not consider any of this. Right. Those claims are not properly before the court. They are forfeited because he did not raise them in a written post-trial motion. He then did not raise them in the appellate court, and he then did not raise them the third time in his petition for relief to appeal. So the claim that we understood him to be raising in his opening brief and then in his reply brief was that the reason that his arrest violated the Fourth Amendment and Article I, Section 6 of the Illinois Constitution is because it was made pursuant to an investigative alert, and what he has identified as the constitutional infirmity of an arrest made pursuant to an investigative alert because, of course, an investigative alert communicates one officer's finding of probable cause to another officer in the field to make that arrest. Defendant's argument is that there is something wrong with investigative alerts that makes them an unconstitutional basis for an arrest, and the thing that he says is wrong about them is that they are based on a police officer's finding of probable cause, not a judge's finding of probable cause. That's how he refers to them as proxy warrants, and the problem with that argument is that there is absolutely no basis under either the Fourth Amendment or Article I, Section 6 of the Illinois Constitution to say that police officers are constitutionally prohibited from making arrests based on probable cause without a warrant. I'll start with the Fourth Amendment. Gerstein is a very good place to start, because Gerstein says explicitly that the Fourth Amendment permits a judicial finding of probable cause after arrest. That necessarily means that it's not constitutionally required before arrest, but I would point the court to United States v. Watson, which is the beginning and end of defendant's claim under the Fourth Amendment. The Supreme Court said in Watson that police officers have constitutional authority to arrest someone based on a police determination of probable cause without a warrant. That is the end of it. We've cited that in our brief. Defendant has not addressed it in his opening brief and his reply brief, and he has not addressed it so far today. I would then, since his claim fails under the Fourth Amendment, his claim rises and falls on whether we can find some basis to depart from the limited lockstep that this court construes Article I, Section 6. And there are, of course, two bases to depart from limited lockstep. One is that there's a difference in the text. If the framers used different words, then they meant different meaning. That fails, because as the court recognized in Fitzpatrick in 2013, for the purposes of protections against unreasonable searches and seizures, the reasonableness clause, the court has already done this analysis and found no difference between the reasonableness clauses of the Fourth Amendment and Article I, Section 6. Now, to be sure, there is a difference in the affidavit clause. The reasonableness clause governs when would a search or seizure be reasonable without a warrant. The warrant clause, under both the Fourth Amendment and Article I, Section 6, governs how do you get a warrant. Under the Fourth Amendment, you have to get a warrant by demonstrating to a neutral magistrate a proper cause through an oath or affirmation. Under the Article I, Section 6 warrant clause, it has to be through an affidavit. Now, in Caballos, this court said that that semantic difference was semantic, that those terms were virtually synonymous. But ultimately, it doesn't matter, because the warrant clause simply does not apply to warrantless searches and seizures. As this court held nearly a century ago in North v. People, when shortly after the adoption of the 1870 Constitution, Article II, Section 6 of the 1870 Constitution has exactly the same warrant clause as Article I, Section 6 of the 1970 Constitution, which simply adopted it and set it off to a period rather than a comment from the reasonableness clause. And this court in North explained that there is simply— the warrant clause has no application to warrantless searches. And with your indulgence, I will quote one line, which I think is helpful. The court said that that difference, affidavit versus oath or affirmation, quote, does not have breached the right to arrest without a warrant, where such arrest could be lawfully made a common law before the adoption of the current Constitution. So this court has understood for over 100 years that the warrant clause of the Article I, Section 6 simply does not in any way affect the authority of a police officer to arrest without a warrant based on probable cause. And that was well within the understanding of the delegates to the Constitutional Convention in 1970 when Delegate Borak, on behalf of the Bill of Rights Committee, told the Convention that the search and seizure section added nothing new. It introduced no new concepts. It was not intended to be a sudden dramatic break from the way the law had functioned for the previous 100 years. So there isn't a textual difference that a defendant can hang his hook on, which means that what he needs is a tradition, a longstanding Illinois tradition of prohibiting police officers from conducting warrantless arrests based on police determinations of probable cause. And there simply is no such tradition. As we've noted on pages 34 and 35 of our brief and footnote 10, this Court has repeatedly, again and again and again, for at least the 100 years between the 1860s and the 1960s, has recognized that police officers can arrest someone based on probable cause without a warrant. That has been the law in Illinois as far back as I can find it. The defendant did not identify or address any of those authorities, those cases, in his reply. He hasn't addressed that body of precedent today. Instead, he cites McGurn for the proposition that an arrest made on the basis of a standing order is unconstitutional. But the problem with relying on McGurn is that McGurn is part of that tradition of allowing warrantless arrests based on police determinations of probable cause. McGurn started with the proposition that it is the rule in Illinois that a police officer can make an arrest based on a determination of probable cause without a warrant. McGurn then said that in that case, the arrest had not been supported by probable cause. In that case, the officer had been directed by a superior to make an arrest. And at the hearing, he said, I didn't have any reason to think he committed a crime, and my superior didn't tell me there was any reason to think he had a crime. I only arrested him because there was this order. And the court had no difficulty saying that a directive by a police supervisor based on absolutely nothing is not a lawful basis to arrest someone. But the fact that it was a standing order was not particularly relevant to the court's decision. I would note that the term standing order comes up exactly once in McGurn. And it comes up in the background section when the court is quoting the arresting officer at great length as he explains why he made the arrest. It was based on, as he said, a standing order. It does not come up in the court's rationale. McGurn stands for the uncontroversial proposition that an arrest made without probable cause is unreasonable and that a search incidence to that unreasonable arrest is also unreasonable. It does not stand for the proposition that if one officer orders another officer to make an arrest, that arrest is unconstitutional under our Constitution. So what you're saying is that if the information that would support potentially finding a probable cause, the way that it's communicated between or among these officers doesn't in any way infringe that information. That's exactly right. It's constitutionally irrelevant. If the department has collectively knowledge of probable cause justifying an arrest, it doesn't matter how it's communicated to the actual officer who makes the arrest. If it's by telephone, by radio broadcast, by face-to-face conversation, by computer notification, as in this case an investigative alert, it doesn't matter how officers communicate their knowledge to one another. What matters is that they have the knowledge. So in this case, what matters is that the detective had probable cause, not that that probable cause was communicated to Officer Kinney by a computer rather than face-to-face. And that's really, I think, an important thing to note, is the basis for defendants' challenge to his arrests because it was pursuant to an investigative alert is because the probable cause determination was made by a police officer, not a judge. And if that's the basis, then that's not something specific to investigative alerts. That is going to affect literally every warrantless arrest in Illinois because every warrantless arrest is necessarily based on a police officer's determination that he has probable cause, not a judge's determination that he has probable cause. That's, I think, why the municipal MEP and the Illinois Association of Chiefs of Police and the Illinois Sheriff's Association saw fit to weigh in because the basis for defendants' challenge will undermine law enforcement across the state. This is a foundational principle of criminal procedure in Illinois, that a police officer with probable cause to arrest someone can arrest that person without a warrant. And to change that would mean that all of a sudden police officers cannot arrest people in all kinds of circumstances where it was uncontroversial before. For example, if the problem is that under our Constitution, a police officer cannot make a finding of probable cause as an exigency, then what that means is that any time an officer communicates probable cause to another officer and there is an exigency, that arrest is unconstitutional without a warrant. Even an officer's own firsthand knowledge of the facts that would give rise to probable cause would not be a constitutional basis to make that arrest. Counsel, I have a question for you. Does the Illinois Constitution or the U.S. Constitution ask a police officer to make a probable cause determination? Yes, Your Honor. Where does it say that? The reasonableness clause. No. Okay, go on. Proceed. Sure. So the reasonableness clause of the Fourth Amendment and of Article I, Section 6 says that there is a protection against unreasonable searches and seizures. And what that has been construed to mean in U.S. v. Watson and by this Court is that an officer must have probable cause to arrest. Arrest not based on probable cause is unreasonable. Now, there are additional protections inside the home where an officer needs a warrant to enter the home unless he has exigency or consent. But otherwise, an officer's authority to arrest is based on having probable cause. But the arrest statute itself says a police officer has the power to arrest if he has reasonable grounds, not probable cause. Right. Reasonable grounds. That is also what the statute in Watson said. In fact, the statute in Watson gave the Federal officers the power to make warrantless arrests. And it provides postal inspectors and other agents of the United States may make arrests without a warrant for felonies if they have reasonable grounds to believe. It says nothing about probable cause.  Reasonable. I'm sorry. I'm finished. My understanding is that certainly the language used to describe probable cause has changed over the centuries. It used to be reasonable belief, reasonable grounds. But that term, for those statutes to be constitutional, must be probable cause. Reasonable grounds, reasonable belief, must be probable cause. And, of course, that's what probable cause is, is a basis that would cause a reasonable person to believe that this person has committed a crime. Where reasonable belief means not more likely than not even just that a reasonably cautious person would think, I think this person has committed this crime. So you're not of the opinion that probable cause is a determination that's made exclusively by a judge. You're saying it could be made by everybody, including a police officer. It absolutely can. And the reason we know that is because Watson said that police officers can make arrests without a warrant based on probable cause. And if that requires a judicial finding of probable cause, then what Watson was saying, without being clear about it, was that an officer must go to a judge, get a finding of probable cause. But he doesn't have to get a warrant. He just gets a finding, then go make the arrest, and then come back and have it. But isn't that what a police officer is supposed to do if they're not exigent circumstances, is go and find a judge and get a warrant for the arrest? So it depends on what we mean by supposed to do. To be sure, there's a strong judgment. Isn't that what the law requires them to do? No, Your Honor. But what the Illinois Constitution and the Fourth Amendment requires is that the officer have probable cause. If you arrest someone without a warrant based on probable cause, then there must be a judicial determination of probable cause within 48 hours. That's the Gerstle hearing. So, again, there is a strong judicial preference for warrants. There's no question about that. And the United States Supreme Court in U.S. v. Watson explicitly said, we are not going to convert that judicial preference for pre-arrest warrants to a constitutional rule. And this court has followed Watson. It is the law in Illinois, it is the law in the United States, and has been since the founding, that a police officer or peace officer may make an arrest based on probable cause without a warrant. There is then a judicial determination of probable cause post-arrest at the Gerstle hearing, as we now call it, that confirms that that arrest was adequately supported. But there is no requirement under our or the federal Constitution, and never has been, that there is a pre-arrest judicial finding of probable cause in all cases. Otherwise, the arrest is unconstitutional, absent exigency. In fact, I think the reason that the Supreme Court and this court in Caballos explained that the role is limited for this court in construing our Constitution. It is not an enactment of policy preferences. It is a construction of the text to give effect to the intent of the framers. And whether there are good reasons to require the Chicago police or any other department to get pre-arrest warrants in every case is ultimately a policy determination, and that is a role for the General Assembly. This court has repeatedly refused to act as a super-legislature to enact that policy preference. And the General Assembly has not enacted that preference. It has gone the other way. If you look at the municipal amici I pointed out in their brief, the Domestic Violence Act not only confirms the authority of officers to make arrests based on probable cause without a warrant, but it requires that they do so when they believe that there has been domestic violence because the General Assembly wanted to make sure that when officers were in a situation where they believed there had been domestic abuse, that they were not leaving the abuser behind when they had probable cause for an arrest. They wanted that arrest made regardless of whether there was actual exigency. The person doesn't have to be about to attack the domestic partner again. It's because we recognize that there are circumstances where police officers need to be able to make arrests, and those are not always exigent circumstances, and that is exactly what the Fourth Amendment in our Constitution has always allowed. So for that reason that we ask that this Court decline to overturn 150 years of its consistent precedent, decline to invalidate multiple current Illinois statutes as unconstitutional, decline to abandon its lockstep approach to Article I, Section 6, by holding that an investigative alert is an unconstitutional basis for an arrest on the ground that a police officer was the one who made the probable cause determination. Counsel, I have one last question. Please. Have you ever taken a look to see whether or not investigative alerts are used primarily in African American or black neighborhoods and Latino neighborhoods? I have not, Your Honor. My understanding is that there is a great deal of debate, and if in fact there is an unconstitutional application of this practice, that is certainly a basis for litigation, but it is not a basis to constitutionalize a rule against officers making probable cause determinations. If I told you, in fact, that over 95 percent of the cases in the Illinois reports that deal with investigative alerts involve blacks and Latinos, would that surprise you? I wouldn't be surprised by those numbers, but I understand that there is. Wouldn't it indicate some bias on the part of the police department in effectuating these investigative alerts? Absolutely. The problem is ultimately, though, that that is not a basis to overturn this defendant's arrest because there is probable cause. If he were to show there wasn't probable cause, if he was to show that there was some kind of malicious prosecution, he may have a civil action against the police officers if they violated civil rights, but it is not a basis to overturn an arrest that is supported by probable cause. Counsel, I have a question for you because you've said repeatedly that this comports with our statutory scheme in the Constitution, but is there any problem in your mind with the elimination of the requirement that probable cause be supported by an affidavit or oath or affirmation, whatever term? I don't want to split.  That refers to the warrant clause. When an officer is seeking a warrant under our Constitution, they have to support it by an affidavit, but that concerns how you get a warrant. It doesn't concern— Wouldn't this process just eliminate any need ever to obtain a warrant? No, Your Honor, because what a warrant does is not authorize an officer to make an arrest. It's the existence of probable cause that authorizes the arrest. What a warrant is is a judicial ticket to enter a place the officer otherwise would be prohibited from entering to make that arrest. So, for example, to enter a home, an officer can't enter a home to make an arrest, just like an officer can't enter a home to make a search unless he has a warrant. But it's the probable cause that ultimately is the authority to conduct the search or conduct the arrest. The warrant is just the ticket to enter that constitutionally protected place. So, if there are no further questions. Thank you very much, Counsel. Counsel in rebuttal. Counsel in rebuttal. Just a few brief points. First, as far as the need for investigative alerts, opposing counsel mentioned the amicus that was filed. The amicus filed on behalf of Mr. Clark showed that, you know, in at least the last 10 years, it has become ever easier for officers to get an actual warrant from a judge that they can use by statute since 2015. The legislature has suggested the use of FaceTime, Zoom, any sort of digital communication to make access to judges easier. So, the idea that this is just police can't do their jobs, but for their own use of technology, that strange cajolity, the correct process uses the same, you know, quick steps that are used by a police department. And instead, some people estimate it can take minutes, if not seconds, to get an actual arrest warrant issued from a judge. Second... Counsel, do you know that to be true across the state of Illinois, in all jurisdictions? The ability to access a judge to secure a warrant for every arrest? Is there consistency across the state? I don't, as far as consistency across the state, I don't know of any cases that have made it through appellate review that deal with investigative alerts being issued anywhere other than in Cook County. But if we were to depart, if we were to rule this way, this would affect the entirety of the state of Illinois, not just Chicago. And my point is, if this were the case, and investigative alerts are absolutely needed by downstate compared to other areas, we would have seen some litigation, presumably, that has worked its way through the appellate system. All the cases that we've seen have been in, you know, Cook County. So that suggests to me that they are not relying on investigative alerts as, you know, as a necessary remedy around workload or something like that. There's been no suggestion, and certainly by the legislature, making a statute saying that, here, these are the means by which you should go to make it easier to get an actual warrant. And that's statewide. That statute applies not just in Cook County. So presumably, you know, and up until the 2000s, everybody had been doing it the correct way with arrest warrants. So is it the way that this information is communicated that you're objecting here? Or it's that an—okay, so— Not the method that it's communicated. It's the method that it's determined. It's determined. It's sidestepping, you know, an actual judge asking questions, like in this case. But hasn't it always been the case that officers made determinations about what they believed to be probable cause that would later, of course, be confirmed or not by a judge? But through the course of their work, they're making determinations of what they believe to be probable cause, making arrests based on that, relying on it. Sometimes it comes from other officers. Sometimes it comes from their own personal knowledge. How would this change? Absolutely with respect to exigent circumstances. If you see a crime happening in front of you, you should, as a police officer, you should respond to it. Okay, but beyond exigent circumstances? Beyond exigent circumstances, if police have time to get a warrant from a judge, they should do so. We believe it's required under the Illinois Constitution. So for every arrest, a warrant would be required? If it's reasonable to do so. So that's—it's been suggested— If there's not exigent circumstances, every other case you would be required to obtain a warrant prior to an arrest. In People v. Smith, which found it unconstitutional to use the investigative alerts, they discussed a period that would be reasonable at 24 to 48 hours from the time of the incident to the time of the arrest. So if you're outside of 24 to 48 hours, which we're in this case, you certainly have time to get an arrest warrant from a judge, which is, as the state acknowledges, that's the preferred system. Yet they're trying to justify a formal system that would make that irrelevant. And that's the way it's been instituted. That's the way the police officer in Smith talked about it. We don't even get arrest warrants anymore unless we think you've fled the jurisdiction. So to concede that yes, this is the preferred method, but hey, let's uphold this system that totally does away with it. It makes no sense. Likewise, they said that this is really a policy determination that should be made by the legislature. It was a policy determination that was made by the delegates to the Constitutional Convention in 1969 when they had on the floor a proposal that would have said, all you need is probable cause. It would have stricken oath or affirmation. It would have stricken affidavit. It would have been done with. It would have been exactly what the state wants the law to be in Illinois. They rejected it. And they chose language that was even more strict than the Fourth Amendment. So there has been a policy debate over this. In 1969, it was decided against the state for these reasons, if there are no further questions. I just want to make sure I'm clear what the issues are because I feel like they're moving. I'm looking at your brief, trying to hold on to something here. Under federal Illinois law, a police generally must obtain an arrest warrant issued by a neutral magistrate upon a finding of probable cause prior to arresting a suspect. And then you go on, obviously, to talk about that principle that you state, that this procedure violates the federal constitution. I asked you about Gerstein, about Watson. You said basically they don't apply here because of the context, the system that's being used, right? That's the first issue? That those federal cases don't apply here because they weren't about a system like we have here, right? That's true. I don't think that they're controlling because they're not talking about a system that would effectively replace Illinois. Maybe I can go into that. But then secondly, you're asking us to have Illinois, under the Illinois constitution, to depart from Gerstein and Watson and the federal cases under the federal constitution, correct? Correct. So it's a lockstep argument. Okay. I want to make real clear one thing. I don't see anywhere in the framing of your issues here or in the appellate court, and I'm not so sure about the trial court, maybe in the trial court, but certainly in the appellate court or here, that the arrest violated the constitution and, therefore, the statements, et cetera, should be suppressed because of an entry in the home. The Payton issue has not ever been raised as the issue before the court. Is that right? In the trial court, it was. It was in the pretrial motion to suppress that Payton was cited and it was litigated there. It's true that it was not included in a post-trial motion and it was not argued in the appellate court. And it's not really being argued here. Well, I mean, that's interesting. I don't see it. I see you citing Payton. I don't see, like, how we usually figure out what the issue before it is, how you've written your brief. I don't see you ever arguing that this arrest was illegal because of a violation of arrest in the home. Payton, do you ever argue that anywhere in your brief? Or in your notice of appeal? Not in the opening brief. What we cite to Payton in the opening brief to show how egregious this practice has become. So it's the system as a whole is now being used. Investigative alerts are now being used as the equivalent of an arrest warrant. How do we know that? Because they're using it to enter a home, as they did in this case. But then the state, when they argued that we had forfeited the issue, they said that Payton wasn't raised in the— it was not preserved in the trial court. They didn't talk about the appellate case at all at that point. And then they brought up the issue of—that there was involuntary consent. So in the reply brief, I do get into that issue in case the court does analyze that. But we are saying that Payton shows just how egregious this practice has become. You're not asking to reverse the conviction based on the error of the court, trial court, in denying the motion to suppress based upon a, let's say, Payton violation. You're not asking us to do that. We didn't ask that. So we don't have to relitigate that motion to suppress. That's— It's a question of credibility, what happened at the door, the trial court's findings, what deference we give to the trial court's findings. We don't have to go there at all. I mean, that's obviously up to the court, not to me. Well, but what do you ask us to do? I think this court should consider that police officers are using these investigative alerts as— regardless of whether they get to the home or not, they're making deliberate decisions before they even get there. We're going to go arrest somebody at their house, and we're going to do it without a warrant. So that's the way this works. So we—based on what you say, this court should not have a section in this opinion that deals with whether or not the entry into the home was unconstitutional. I'm not saying that, but as far as what was raised in the appellate court, you are correct. I'm not advocating what you should or shouldn't do as far as analyzing the issue. Okay. Thank you. Okay. This case, number—agenda number four, number 127838, People of the State of Illinois v. Angelo Clark, will be taken under advisement. Thank you very much, both.